IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| RICHI DANETTE YAW,<br><br>          Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | No. 9:21-CV-59-TH |

## AMENDED REPORT AND RECOMMENDATION[1]

The claimant, Richi Danette Yaw, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The District Court referred the case to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. The undersigned finds that the Administrative Law Judge ("ALJ") erred in assessing the medical opinion evidence and that remand is warranted.

## I. FACTUAL AND PROCEDURAL HISTORY

Yaw filed a claim for disability insurance benefits (DIB) on May 29, 2019, alleging she became disabled on April 20, 2019. (Tr. 17.) She has a high school education and past work as a department manager, personal assistant, sales representative, and retail worker. (Tr. 211-12.)

Yaw's claim was denied initially and upon reconsideration, therefore she requested an administrative hearing that was held before ALJ David J. Hebert on August 2020. (Tr. 19-29.) ALJ Hebert issued his decision denying her claim on October 2, 2020 (*Id.*) ALJ Hebert utilized

---

[1] The only revision contained in this Report and Recommendation is the correction of the administrative law judge's surname. There are no substantive changes to the original Report and Recommendation filed on December 15, 2022.

the five-step sequential analysis model specified by regulations and approved by courts.[2] At step one, ALJ Hebert found that Yaw has not engaged in substantial gainful activity since the alleged onset date. (Tr. 21.) At step 2, ALJ Hebert determined that Yaw had the following severe impairments: Meniere's disease with vertigo, narcolepsy with fatigue, and obesity. (Tr. 22.) He considered her diagnosis of Meniere's disease and obesity at step three but found that she does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). In assessing her abilities, he found that she has the residual functional capacity ("RFC") to perform light work, except that she can:

> never climb ladders, ropes or scaffolds and never balance. The claimant can occasionally climb ramps, stairs and occasionally stoop. The claimant must avoid dangerous machinery or equipment, unprotected heights and operating a motor vehicle.

(Tr. 25.) In relying on vocational expert testimony, ALJ Hebert concluded that Yaw was capable of performing her past relevant work, and therefore not disabled. (Tr. 25-27.) The Appeals Council denied Yaw's request for review on January 28, 2021. (Tr. 1-3.) Having exhausted administrative remedies, Yaw seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. JUDICIAL REVIEW

This court reviews the Commissioner's denial of social security disability benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Keel v. Saul*, 986

---

[2] To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps. *See* 20 C.F.R. § 404.1520(a)(4); *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do his "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *Id*.

F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted). Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence "must be more than a scintilla[,] it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quotation marks and citation omitted).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Commission*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

### III.  POINTS OF ERROR AND RESPONSE

Yaw raises two points of error on appeal. First, that ALJ Hebert failed to properly evaluate the medical opinion evidence consistent with Agency authority and Fifth Circuit precedent. Second, she claims that ALJ Hebert provided no analysis of her subjective complaints. The Commissioner responds that contrary to Yaw's allegations, ALJ Hebert properly addressed the medical opinion evidence in accord with the new, relevant regulations and that substantial evidence supports his decision. She further contends that the ALJ's analysis of her subjective complaints is supported by the record and entitled to judicial deference. The undersigned recommends remanding her case based on the first argument presented, and therefore declines to address Yaw's second point of error.

## IV. EVALUATION OF MEDICAL OPINION EVIDENCE

Pursuant to the revised rules for evaluating medical opinions, the ALJ must determine the persuasiveness of a physician's medical opinion. 20 C.F.R. § 404.1520c(b). When evaluating whether a medical opinion is persuasive, the ALJ considers five factors: 1) supportability; 2) consistency; 3) the relationship with the claimant; 4) specialization; and 5) other factors which "tend to support or contradict the opinion." *Id*. § 404.1520c(c). When addressing the sufficiency of an ALJ's persuasiveness discussion under § 404.1520c(b)(2), one court described the ALJ's obligation as follows:

> An ALJ's persuasiveness discussion is critical to his analysis and . . . must provide the Court with an 'adequate discussion' of his reasons for finding a particular medical opinion to be persuasive or unpersuasive. The measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof. Stated differently, there must be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding.

*Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 500 (S.D. Miss. 2021) (citing *Pearson v. Comm'r*, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021); *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *4 (S.D. Tex. Mar. 15, 2022). The most important factors in this analysis are supportability and consistency. *See id*.; 20 C.F.R. § 404.1520c(b)(2) (The ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior medical findings in [his] determination or decision.").

"Supportability" focuses on how well the medical evidence and supporting explanations given by the medical provider support the provider's opinion. *See* 20 C.F.R. § 404.1520c(c)(1)

("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."); *see also, Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[T]he strength of a medical opinion increases as the relevance of the objective evidence and explanations presented by the medical source increase." (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency," on the other hand, is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." (*Id.*)

## V. DISCUSSION

In addressing the persuasiveness attributed to Dr. Fehlis's physical assessment of Yaw, ALJ Hebert explained:[3]

> The undersigned considered the assessment of treating physician Dr. [Fehlis] and found it [only] somewhat persuasive. Dr. [Fehlis] opined the claimant would need three to four unscheduled breaks lasting five minutes each during an eight-hour workday. But also, [he] indicated the claimant could lift twenty pounds frequently and fifty pounds occasionally. The undersigned finds the opinion somewhat persuasive because some of the opinion is inconsistent with the medical evidence. The opinion is unsupported because evidence received at the hearing level shows the claimant was less limited than determined by the physician regarding unscheduled breaks as the medical evidence shows multiple normal physical examinations. The opinion is supported by the multiple normal physical examinations. Therefore, the undersigned found Dr. [Fehlis's] opinion somewhat persuasive because some of the opinion was consistent with the medical evidence as a whole.

(Tr. 25-26) (emphasis added) (internal citations omitted).[4]

---

[3]    In his opinion, ALJ Hebert refers to Dr. "Kehlis." The undersigned presumes this was a typographical error because Yaw's medical record does not contain evidence from Dr. Kehlis, and the corresponding transcript page numbers contain evidence from Dr. Fehlis at Hill Country Medical Associates. (Although the transcript index also mistakenly refers to Dr. "Kehlis.")

[4]    ALJ Hebert uses the same language to explain the persuasiveness attributed to Dr. Fehlis's mental capacity assessment and Physical Therapist Jennifer Cross's physical assessment. (Tr. 26) (finding both "unpersuasive"). Because these explanations mirror the language used by ALJ Hebert in considering Dr. Fehlis's opinion evidence of Yaw's physical ability, they are also deficient pursuant to § 404.1520c for the reasons discussed *infra*.

5

Here, ALJ Hebert concludes that the medical opinion evidence of Dr. Fehlis is only "somewhat persuasive" because it is inconsistent "with the record as a whole," not supported by evidence received at the hearing level, and unsupported by "multiple normal physical examinations." (Tr. 26.) He does not provide a pinpoint cite for any conflicting evidence, but rather refers to over sixty pages of Dr. Fehlis's treatment notes from September 14, 2017 to January 10, 2020, that he summarily describes as documenting "normal physical examinations." (Tr. 320-366, 381-392). ALJ Hebert's explanation might be sufficient under § 404.1520c—*if* the doctor's treatment notes strayed from the limitations assessed, he identified the clear inconsistences, and his finding is supported by substantial evidence. *See Brent v. Kijakazi,* No. 3:21-CV-246-FKB, 2022 WL 16009198, at *3 (S.D. Miss. Sept. 19, 2022) (reviewing courts "will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)"); *Cooley*, 2021 WL 4221620, at *6 (finding that the "measuring stick" for an adequate discussion is whether findings are supported by substantial evidence and does not require speculation about the reasons behind the ALJ's persuasiveness findings); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (recognizing that, under § 404.1520c, an applicant's "treating physicians are not entitled to special deference," and reviewing ALJ's analysis under this regulation for substantial evidence); *compare with Webster v. Commissioner*, No. 3:19-cv-97-DAS, 2020 WL 760395, *3 (N.D. Miss. Feb. 14, 2020), aff'd, 19 F.4th 715 (5th Cir. 2021) (affirming where ALJ made specific references to the record, and substantial evidence supports his decision); *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) (affirming where ALJ found opinion evidence unpersuasive and referenced specific records that were inconsistent with the doctor's opinion); *Chunn v. Comm'r of Soc. Sec. Admin.*, No.

320CV00667KHJBWR, 2022 WL 4225394, at *2 (S.D. Miss. Sept. 13, 2022) (finding that the ALJ's explanation was adequate where he referenced x-rays, doctor's evaluation, and nurse's treatment notes to find the opinion evidence "not supported by the overall evidence of record").

The undersigned finds that ALJ Hebert's explanation fails the specificity threshold of § 404.1520c for two reasons. First, ALJ Hebert's reference to the record "as a whole" is too general for a court to identify the specific evidence on which he relied and precludes meaningful appellate review. *See Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718 (FPG), 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (remanding where ALJ summarily concluded that examining physician's opinion is inconsistent with overall medical evidence)*; Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (holding that the ALJ's explanation is not sufficient where he cited to some "objective medical evidence in the record" and simply concluded that an opinion is "consistent with other evidence in the file") (internal citations omitted). Even though ALJ Hebert made a vague reference to Dr. Fehlis's treatment notes, he should have provided a more precise reference to what *specific* evidence demonstrated "normal" examinations. Without which, the undersigned must speculate as to the evidence and reason behind ALJ Hebert's persuasiveness finding. Therefore, his explanation fails the specificity required under § 404.1520c.

Second, the treatment notes relied on by ALJ Hebert do *not* document "normal" examinations, and therefore, his decision is not supported by substantial evidence. Yaw first presented to Dr. Fehlis's office, Hill Country Medical Associates, in the fall of 2017 with complaints of dizziness, fatigue, sleep apnea, and depression. (Tr. 298-299, 358.) Dr. Fehlis compiled a letter to Yaw's employer dated March 2, 2018, in which he states she cannot perform the duties of full-time work due to complications caused by dizziness and need for frequent

bathroom breaks. (Tr. 295.) Dr. Fehlis continued treating Yaw for narcolepsy, depression, fatigue, and common migraines, and in January 2019, she was referred to a specialist, Gerlyn Friesenhan, M.D., for evaluation of vertigo. (Tr. 302-304.) During his treatment of Yaw, Dr. Fehlis consistently assessed her with depression, dizziness, narcolepsy, fatigue, and migraine disorder. (Tr. 358-359, on September 14, 2017); (Tr. 354-357, on January 4, 2018); (Tr. 350-352, on January 30, 2018); (Tr. 347-349, on February 15, 2018); (Tr. 344-346, on April 5, 2018); (Tr. 340-343, on July 5, 2018); (Tr. 337-339, on July 19, 2018); (Tr. 333-336, on September 27, 2018); (Tr. 329-332, on December 19, 2018); (Tr. 325-327, on January 3, 2019), (Tr. 383-386, on January 10, 2019); (Tr. 323 on March 8, 2019); (Tr. 387-390, on September 16, 2019); (Tr. 383-386, 401, on January 10, 2020) (Tr. 395-398, on April 3, 2020); (Tr. 425-428, on July 29, 2020). Her symptoms during this time were noted to include migraines, hypersomnia, fatigue, dizziness, and depression, and Dr. Fehlis prescribed a variety of medications.[5] (*Id.*) Substantial evidence under the Social Security Act "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. A reasonable mind could not accept that Dr. Fehlis's treatment notes support a finding that Yaw's examinations were "normal," and therefore, ALJ Hebert's decision is not supported by substantial evidence.

## VI. CONCLUSION

In summary, the undersigned finds that ALJ Hebert's failure to properly evaluate the medical opinion evidence was not harmless. Accordingly, the Commissioner's administrative decision should be remanded.

---

[5] Dr. Fehlis's most recent treatment note dated July 29, 2020, listed her current medications: cholecalciferol, Trintellix, hydrochlorothiazide, Maxalt, Nuvigil, Concerta, Topamax, and prazosin. (Tr. 426.)

## VII.  OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation.  Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.  *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2).  A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 18th day of January, 2023.

Zack Hawthorn
United States Magistrate Judge

9